# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH

DEVON A. FRYE                                            PLAINTIFF

v.                                            CIVIL ACTION NO. 5:13CV-P224-R

DANIEL KING *et al*.                                     DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Devon A. Frye, a prisoner proceeding *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983 (DN 1). This matter is before the Court for initial review pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons set forth below, this action will be dismissed.

## I. STATEMENT OF THE CASE

Plaintiff brings this action against two Defendants: (1) Daniel King, the Unit Administrator at Luther Luckett Correctional Complex [LLCC]; and (2) Tiffany Ratliff, the Deputy Warden at LLCC. Plaintiff indicates that he is suing Defendant King in both his individual and official capacities and Defendant Ratliff only in her official capacity. As relief, Plaintiff seeks punitive damages and to "void [the] Interstate Corrections Compact Agreement between Virginia and Kentucky."

Plaintiff is presently incarcerated at Kentucky State Penitentiary [KSP] whereas the events about which he complains occurred while he was incarcerated at LLCC. Plaintiff states that on November 8, 2013, a "documented Blood Gang member" was transferred to LLCC. Plaintiff states that when this inmate discovered that Plaintiff was housed at LLCC, he approached Plaintiff and made threats of violence to Plaintiff because he had information that

Plaintiff was "on the run from the Bloods in Virginia because of disloyalty, and that a price had been put on [Plaintiff's] head." Plaintiff represents that this "Blood Gang member" inmate informed him that a correctional officer at Eastern Kentucky Correctional Complex [EKCC] was the source of this information about Plaintiff. Apparently, the correctional officer blamed Plaintiff for her daughter being terminated from employment at EKCC. Plaintiff states that he "attempted to file conflict on [the correctional officer]" because she was slandering Plaintiff's name and divulging sensitive information about his transfer. Plaintiff admits that he was in fact transferred to Kentucky for the reasons stated by the "Blood Gang member" inmate, but that this information should not have been divulged.

According to Plaintiff, he "studiously avoided [the 'Blood Gang member' inmate], but [he] was further accosted by other Blood Gang members." Plaintiff states that on November 11, 2013, he requested protective custody. As a result of this request, Plaintiff was removed from general population and was placed in segregation. Plaintiff states that on November 14, 2013, a protective custody hearing was conducted by Defendant King. Plaintiff states that he explained the situation to Defendant King and informed him that "due to the small community with regards to Kentucky DOC's [Department of Corrections] medium/close security prison population the safest option was either long term protective custody or [him] being transferred out of state again." Defendant King denied Plaintiff's request for protective custody, but informed Plaintiff that Plaintiff "was receiving a standard transfer to another facility because he felt [Plaintiff] would be assaulted by an unspecified number of inmates if allowed to return to population at LLCC." According to Plaintiff, he explained to Defendant King that this was only a "quick fix," but did not address the issue of Plaintiff's life being in danger. Plaintiff then requested

Defendant King to notify the Virginia DOC about the developments with Plaintiff. Plaintiff states that Defendant King informed Plaintiff that "statistically the numbers indicated [Plaintiff] wouldn't be killed and so [Plaintiff] wouldn't be awarded long term PC [protective custody], furthermore it wasn't his position to contact Virginia DOC." Further, Plaintiff was informed of his right to appeal.

Plaintiff states that he appealed the decision because he felt he was in danger. On November 20, 2013, according to Plaintiff, he was informed that his appeal had been denied and that he would not receive protective custody, but he would be transferred. Plaintiff states that on the following day Defendant Ratliff informed him that she was reviewing Plaintiff's transfer paperwork and "that Virginia would be notified." According to Plaintiff, his grandmother informed him on December 10, 2013, that the Virginia DOC was unaware of Plaintiff's situation after she learned about this from the Interstate Corrections Compact Coordinator. When inquiring of Defendant Ratliff as to why the Virginia DOC was unaware of his situation, Defendant Ratliff informed Plaintiff "that the state of Kentucky wasn't obligated to alert them of anything because [Plaintiff was] a Kentucky inmate."

Plaintiff contends that the actions of Defendants "demonstrate deliberate indifference and gross negligence, also falling under the purview of an 8th Amendment violation for cruel and unusual punishment." According to Plaintiff, the action or lack thereof by Defendants have kept him in a "hostile and violent environment." Plaintiff believes it is not a question of if he will be assaulted or killed, but when.

## II. **STANDARD OF REVIEW**

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d at 604. A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all

4

potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. <u>LEGAL ANALYSIS</u>

*A. Eleventh Amendment Immunity*

Under the Eleventh Amendment to the U.S. Constitution,[1] a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)); *see Ferritto v. Ohio Dep't of Highway Safety*, No. 90-3475, 1991 WL 37824, at *2 (6th Cir. Mar. 19, 1991) ("The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985.").

---

[1]The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

The Eleventh Amendment also bars damages claims against state officials sued in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *McCrary v. Ohio Dep't Human Servs.*, No. 99-3597, 2000 WL 1140750, at *3 (6th Cir. Aug. 8, 2000) (finding § 1983 and § 1985 claims against state agency and its employees in their official capacities for damages barred by Eleventh Amendment immunity).

For these reasons, the § 1983 official-capacity claims for damages against Defendants will be dismissed for seeking monetary damages from a defendant immune from such relief.

## B. *Eighth Amendment Claim*

Plaintiff contends that he needs to be in protective custody in order to be protected against harm from other inmates who have made verbal threats against him. Plaintiff contends that Defendants' failure to comply with this request violates the Eighth Amendment.

"Prisons are necessarily dangerous places; they house society's most antisocial and violent people in close proximity with one another." *Farmer v. Brennan*, 511 U.S. 825, 858 (1994) (Thomas, J. concurring). As a result, some level of prison violence is unavoidable no matter what precautions are taken and officers cannot be expected to prevent every assault before it occurs or to stop every assault in progress before injuries are inflicted. *Id.* at 858-59. "[A] prison official may be held liable . . . for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

An Eighth Amendment failure-to-protect claim has both an objective and subjective component. First, "to establish a constitutional violation based on failure to protect, a prison inmate . . . must show that the failure to protect from risk of harm is objectively 'sufficiently

6

serious.'" *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). "The inmate must show that 'he is incarcerated under conditions posing a substantial risk of serious harm.'" *Id.*

Second, "a plaintiff also must show that prison officials acted with [subjective] 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. at 834). A plaintiff must show "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer v. Brennan*, 511 U.S. at 835 (citation and quotations omitted). The subjective requirement is met only where a plaintiff demonstrates that prison officials acted with "deliberate indifference" to a substantial risk of harm. An official is deliberately indifferent where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Id.* at 838.

Additionally, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. at 844. "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishment Clause." *Id.* at 845.

It is clear from the facts alleged by Plaintiff that his claim fails at least the subjective component of his failure-to-protect claim. When informed by Plaintiff about his fear of possible harm, he was removed from general population and placed in segregation at LLCC. Thereafter, he had an administrative hearing where Defendant King heard Plaintiff's arguments and

7

concluded that protective custody was not necessary. In part, Defendant King based his decision on statistics from which he concluded Plaintiff was not at a substantial risk of harm. Defendant King made the decision that transfer to another facility was the best course of action to protect Plaintiff. Defendant King's decision was upheld on administrative appeal apparently by Defendant Ratliff. Plaintiff was transferred from LLCC and is now incarcerated at KSP. The facts alleged by Plaintiff do not support deliberate indifference on the part of Defendants. Defendants did not disregard the risk to Plaintiff "by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. at 858.

Having failed to allege a viable violation of a right secured by the Constitution, Plaintiff's action must be dismissed for failure to state a claim upon which relief may be granted.

## C. 42 U.S.C. § 1997e(e)

There is an additional reason that this action must be dismissed. Pursuant to the Prison Litigation Reform Act [PLRA], 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." Plaintiff has not alleged the commission of a sexual act. He has also not alleged any physical injury in connection to being denied placement in protective custody. Without the showing of some physical injury associated with his claim, Plaintiff's action fails. *See Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (finding that plaintiff's claim that he was uncomfortable after being sprayed with pepper spray was precluded by 42 U.S.C. § 1997e(e) since he failed to show more than a de minimis injury); *Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003) (affirming the district court's grant of summary judgment in favor of defendant since plaintiff failed to allege any physical injury arising out of the strip

8

searches about which he complained); *Robinson v. Corr. Corp. of Am.*, 14 F. App'x 382, 383 (6th Cir. 2001) (affirming dismissal of claims for "emotional distress, embarrassment, humiliation, and itching" since plaintiff "suffered at most only de minimis physical injury"); *Bey v. Garber*, No. 99-1471, 2000 WL 658721, at *1 (6th Cir. May 12, 2000) (alleged humiliation and embarrassment suffered by inmate seen naked and laughed at by female corrections officers failed to satisfy physical-injury requirement); *Pryor v. Cox*, No. 97-3912, 1999 WL 1253040, at *1 (6th Cir. Dec. 13, 1999) (finding plaintiff's claim of being subjected to bad food, unsanitary conditions, and excessive heat without also claiming he had suffered any physical injury as a result of these conditions was meritless).

### D. State-Law Claims

To the extent Plaintiff is attempting to bring a state-law claim, the Court declines to exercise supplemental jurisdiction over such a claim. Under 28 U.S.C. § 1367(c), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because the Court will dismiss the federal claims over which it has original jurisdiction, it will decline to exercise supplemental jurisdiction over the state-law claims and dismiss them without prejudice. *See Runkle v. Fleming*, 435 F. App'x 483, 486 (6th Cir. 2011) ("[W]hen, as here, 'all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.'") (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)).

### IV. **CONCLUSION**

Plaintiff having failed to state a claim upon which relief may be granted, the Court will enter a separate Order dismissing this case pursuant to 28 U.S.C. § 1915A(b)(1). Plaintiff

having failed to allege any physical injury, the Order will also dismiss this case pursuant to 42 U.S.C. § 1997e(e). Further, having sought monetary relief from Defendants who are immune from such relief, the Court's Order will dismiss the official-capacity claims for monetary damages pursuant to 28 U.S.C. § 1915A(b)(2). Finally, in the Order of dismissal, the Court will decline to exercise supplemental jurisdiction over any state-law claims.

Date:




cc: Plaintiff, *pro se*
    Defendants
    General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.003